## TROWBRIDGE & JENNINGS *vs*. MEANS.

A judgment debtor is not subject to the process of garnishment.
Whether a debtor, against whom suit has merely been commenced, can be garnisheed, *dub*.

THIS was a proceeding under the statute of garnishment, determined in the Pulaski Circuit Court, in December, 1842, before the Hon. JOHN J. CLENDENIN, one of the circuit judges. James Means, having obtained judgment, in the same Court, against Amos Hartley, sued out a writ of garnishment under the statute, against Samuel G. Trowbridge and Richard T. Jennings, as partners, to subject to his judgment any debt due by them to Hartly. In August, 1842, he filed his allegations and interrogatories—to which, in December, they answered that Hartley had recovered judgment against them for a specified amount, in the same Court, on which execution had issued; and denied any other indebtedness. For the amount of that recovery, the Court rendered judgment against them. The case came up by

Trowbridge & Jennings *vs.* Means.

writ of error, and was argued by *Hempstead & Johnson*, for plaintiffs in error, and *W. & E. Cummins*, contra.

*By the Court*, PASCHAL, J. The Court are called on in this case to decide the single question whether or not a judgment debtor can be held to answer under our statute of garnishment.

The first section of Revised Statutes, chapter 69, page, 424, is in the following words: "In all cases where any plaintiff may have obtained a judgment, in any court of record, or before any justice of the peace of this State, and such plaintiff shall have reason to believe that any other person is indebted to the defendant, or has in his hands or possession goods and chattels, moneys, credits, and effects, belonging to such defendant, such plaintiff may sue out a writ of garnishment, setting forth such judgment, and commanding the officer charged with the execution thereof, to summon the person therein named as garnishee to appear at the return day of such writ, and answer what goods, chattels, moneys, credits, and effects, he may have in his hands or possession, belonging to such defendant, to satisfy said judgment, and answer such further interrogatories as may be exhibited against him." The eighth section provides that, "in all cases where judgment shall be rendered against any garnishee on an answer to interrogatories filed, such judgment shall have the effect to release the garnishee from all responsibility in relation to the goods and chattels, moneys, credits, and effects, for which such judgment may have been rendered." Our statute is general in its terms, and would seem to embrace every class of "credits." But it is believed not to be more general in its terms than the general statutes of attachment and garnishment in other States. Such statutes are all in derogation of the common law, and have generally received a strict construction.

In Massachusetts, in the case of *Howell vs. Freeman et al.*, it was held that a debt due from A. to B., for the recovery of which an action has been commenced and referred by a rule of Court, in which rule it was agreed that judgment should be entered up according to the report of referees, and execution issue thereon, is not liable to attachment in the hands of A., at the suit of B's creditors. In Massachusetts, they have a statute precisely in accordance with the 8th sec-

Trowbridge & Jennings vs. Means.

tion of our act. But, in this case, PARSONS, C. J., put the decision upon the general ground that the debt was already in suit, and therefore to subject the debtor to attachment, would be to render him twice liable for the same debt. And in the case of *Kidd vs. Shepperd,* 4 *Mass.* 238, after a verdict in this cause for the plaintiff, the defendant moved to stay judgment, because, after the plea pleaded and issue joined, and during the term in which the case was tried, before the verdict, the goods, effects, and credits of the plaintiff, were attached in his hands, as trustee of the plaintiff, in several suits commenced against him by his creditors. But the motion was denied, and PARSONS, C. J., said: "In this case, the attachment was made after plea pleaded and issue joined, and the motion was after verdict. The attachment is, therefore, void, and judgment cannot be stayed." And he said the same doctrine was held in *Howell vs. Fry,* trustee of *Freeman,* 3 *Mass.* 121. And in *Gridly vs. Harraden,* 14 *Mass.* 497; *Foster vs. Jones,* 15 *Mass. Rep.* 185, the same principle, under a somewhat different state of facts, was held. In *Horndike vs. DeWolfe,* 6 *Pick.* 120, PARKER, C. J., reviews all the cases on the subject, and shows that *Gridly vs. Harraden,* found in the appendix of 14 *Mass. Rep., p.* 496, was, in fact, decided in the year 1780, under the old provincial trustee act, passed in 32 *Geo. II.;* and he says: "Under the present existing statute, it has never been determined that the mere commencement of a suit for a debt prevents the operation of the statute. On the contrary, this process has been maintained after such suit commenced, as in the cases of *Locker vs. Tippetts & Tr.,* 7 *Mass. Rep.* 149; *Kidd vs. Shepperd,* 4 *Mass.* 238; *Foster vs. Jones,* 15 *Mass. Rep.* 185. But such is not our reading of the case of *Kidd vs. Shepperd;* because, in that case, the Court refused to decide the point whether the mere commencement of the suit might defeat the attachment; but the attachment being sued out after verdict, they expressly held it void. And in *Foster vs. Jones,* the payment of money due the plaintiff to the plaintiff's creditor, under their trustee process, was held to be a good discharge to the defendant, notwithstanding the plaintiff had commenced suit before the defendant was summoned as trustee.

The better decision in Massachusetts seems, therefore, to be, that the mere commencement of a suit against a debtor does not prevent

18

his being made liable as garnishee; but he may plead such matter before reference or verdict.   In the case of *Wallace vs. McConnell*, 13 *Pet. Rep.* 136, an action was instituted on a promissory note, against the drawer.   The defendant pleaded *puis darrien continuance*, stating that $4024, part of the amount of the note, had been attached by B. and W., in a State Court of Alabama, under the attachment law of that State, and a judgment had been obtained against him for $4204 and costs, with a stay of execution until further proceedings in this case.   The plaintiff demurred to the plea, and the Circuit Court sustained the demurrer.   The Supreme Court of the United States sustained the decision; and THOMPSON, J., said, " The judrisdiction of the District Court of the United States, and the right of the plaintiff to prosecute his suit in that Court having attached, that right could not be arrested or taken away by any proceedings in another Court. This would produce a collision in the jurisdiction of courts that would extremely embarrass the administration of justice.   If the attachment had been conducted to a conclusion, and the money recovered of the defendant before the commencement of the present suit, there can be no doubt that it might have been set up as a payment of the note in question.   And if the defendant would have been protected *pro tanto* under a recovery had by virtue of the attachment, and could have pleaded such recovery in bar, the same principle would support a plea in abatement of an attachment pending prior to the commencement of the present suit.   The attachment of the debt in the present case, in the hands of the defendant, would fix it there in favor of the attaching creditor, and the defendant could not afterwards pay it over to the plaintiff.   The attaching creditor would, in such case, acquire a lien upon the debt binding upon the defendant, and which the courts of all governments, *if they recognize such proceedings at all, could not* fail to regard.   If this doctrine be well founded, the priority of suit will determine the right.   The rule must be reciprocal; and when the suit in one court is commenced prior to the institution of the proceedings under attachment in another court, such proceedings cannot arrest the suit, and the maxim *qui prior est tempore potior, est jure*, must govern the case."

The same doctrine was held by the same Court, in the case of *Bus-*

*sard vs. Marsall*, 1 *Wheat.* 216, and *Beastow vs. The Farmers' Bank of Maryland*, 12 *Pet.* 102. The latter was a case of peculiar hardship, as the garnishee had to pay the debt twice, at the same time holding bills of the bank to which his note was payable; which bills were at a depreciated value, and in which he contended he had a right to discharge his debt to the bank. The Maryland statute is set out in the case, and is not less general than our own, although they are laws about attachments, and not a law authorizing a garnishment after judgment. These decisions are of too high authority to be disregarded; and, although we should be disposed to make a statute, passed to aid in the collection of judgments, as remedial as possible, yet we are not at liberty to disregard the reasons which have operated with the ablest courts in the Union.

In the present case, Trowbridge and Jennings answer, that Hartley had recovered, in the Pulaski Circuit Court, the sum of $154 70, and costs, upon which judgment execution had issued, and that the judgment remained in full force, and unsatisfied. They denied all further indebtedness, and submitted to the Court whether judgment ought to be rendered against them in said writ of garnishment, in respect of said indebtedness; and they prayed to be discharged, with costs. The Court rendered judgment for the amount disclosed, together with the costs of the garnishment. This Court has already settled, that a garnishment is a suit in which both plaintiff and defendant have day. *Thorn and Robbins vs. Woodruff and Rutherford, ante.* Now, although the defendants disclose an indebtedness, yet they set forth that judgment had already been rendered against them for the amount, and that they were then exposed to execution. A matter of record cannot be set aside *in pais.* 14 *Mass. Rep.* 498. *Unumquodque dissolvitur eo ligamine quo ligatum est.*

In *Prescott vs. Parker*, 4 *Mass.* 170, it was expressly ruled, that a judgment debtor, against whom an execution may issue, is not liable to attachment as the trustee of the judgment creditor. It would certainly be wrong that, after judgment is obtained against a debtor, he should be exposed to a second suit, and a second demand for the same debt. He would thus be left remediless, except by resorting to the ancient, if not obsolete, writ of *audita querela*, or else be diven to the

---

still more expensive remedy of petition, under our statute about executions. But there are still stronger reasons against such a practice. If the defendant is liable under the process of garnishment at all, he is liable from the time of the service of the writ. But between the time of the service of the writ of garnishment and the day for answering, his property may be exposed to execution and sale, and he is left remediless against the plaintiff in execution. For aught that the debtor can know, the judgment debtor may be able to reverse, or in some way defeat, the judgment on which garnishment is sued out.

This Court are not prepared to say that they would go the full length of deciding that, after the commencement of a suit in another court for the same debt, that the process of garnishment would not lie. The question of jurisdiction acquired by the commencement of the suit, may have had some influence with the Supreme Court of the United States. This question we are not now called on to decide. But we are clearly of opinion that, after the rendition of judgment against a debtor, he is not subject to garnishment. Judgment reversed.